IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00470-EWN-CBS

ECHOSTAR SATELLITE L.L.C., a Colorado Limited Liability Company,
ECHOSTAR TECHNOLOGIES CORPORATION, a Texas Corporation, and
NAGRASTAR L.L.C., a Colorado Limited Liability Company,
        Plaintiffs,
v.

ALEXANDER TOROK, an Individual,
        Defendant.[1]

---

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
ON PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

---

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on Plaintiffs' Motion for Default

Judgment (filed May 31, 2005) (doc. # 10).  Pursuant to the Order of Reference dated

March 15, 2005 (doc. # 2) and the Special Order of Reference dated June 3, 2005

(doc. # 14), Plaintiffs' Motion was referred to the Magistrate Judge "for the purpose of

conducting an evidentiary hearing on the motion and submitting to the court proposed

findings of facts and recommendations for the disposition of the motion."  The court

has reviewed Plaintiffs' Motion, the exhibits and affidavits, the entire case file, the

evidence and argument presented at the hearing held August 8, 2005, and the

applicable law and is sufficiently advised in the premises.

I.      Statement of the Case

Plaintiffs ("Echostar") include a Colorado limited liability company, a Texas corporation, and a Colorado limited liability company with their principal places of business in Englewood, Colorado. (Complaint at ¶¶ 10-12). Echostar is engaged in the business of providing multi-channel and audio television programming, using satellites to broadcast digitally scrambled signals encoded for reception by authorized subscribers throughout the United States. (Complaint at ¶ 1). Encoded Echostar programming is provided under the trade name "DISH Network." (Complaint at ¶ 1).

To prevent the unauthorized reception of Echostar programming, Echostar uses digital technology to scramble the satellite signal. (Complaint at ¶ 2). Echostar satellite signals are received by authorized subscribers by a fixed dish antenna. (Complaint at ¶ 3). The dish is connected by cable to a satellite receiver, which is connected by cable to a television monitor. (Complaint at ¶ 3). The satellite receiver includes a conditional access microprocessor that descrambles the encoded programming for the subscriber. (Complaint at ¶ 4).

Echostar alleges that Torok assisted and continues to assist other persons in circumventing the technological measures that control access to Echostar programming by use of altered Echostar receivers and/or "Published Box Keys."[2] (Complaint at ¶ 9). Echostar alleges that Torok personally used and offered to the public, provided, and/or otherwise trafficked in signal theft devices in Colorado.

(Complaint at ¶ 9).  Echostar alleges that Torok used interstate and/or foreign wire facilities, including the internet, the United States Postal Service, and/or commercial mail carriers in furtherance of his unlawful conduct.  (Complaint at ¶ 9).

By this lawsuit, Echostar seeks injunctive relief, statutory penalties, damages, costs, and reasonable attorney fees for Torok's unlawful acts of: (1) manufacturing, designing, selling, distributing, shipping, and/or otherwise trafficking in one or more signal theft devices; (2) intercepting, receiving, unscrambling, and using Echostar's digitally scrambled satellite signals without authorization; and/or (3) assisting or otherwise facilitating other persons in the unlawful interception, receipt, unscrambling, and use of Echostar's digitally scrambled satellite signals without authorization, in violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201(a)(1)A), § 1201(a)(2), and § 1201(b)(1), the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605(a) and § 605(e)(4), and the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1)(a).  (Complaint at ¶¶ 15, 29-34 (First Cause of Action), 35-40 (Second Cause of Action), 41-46 (Third Cause of Action), 47-53 (Fourth Cause of Action), 54-59 (Fifth Cause of Action), 60-64 (Sixth Cause of Action)).

Echostar filed this civil action on March 14, 2005.  Torok was served on April 8, 2005.  (*See* Return of Service (doc. # 4)).  On June 2, 2005, the court issued a Minute Order (doc. # 12) confirming that the Scheduling Conference would be held on June 3, 2005.  On June 3, 2005, the Clerk of the Court entered default against Torok

3

pursuant to Fed. R. Civ. P. 55(a).  (*See* doc. # 13).  Torok was notified of the

Scheduling Conference and the Entry of Default by Certified Mail Return Receipt

Requested.  (*See* Exhibit 1 to Supplemental Declaration of Joseph H. Boyle (doc. #

21)).  The envelope was returned unclaimed.  (*See id.*).  Torok did not appear at the

June 3, 2005 Scheduling Conference.

On June 15, 2005, the court issued a Minute Order (doc. # 16) setting a hearing

on Plaintiffs' Motion for Default Judgment (doc. # 10) on August 8, 2005.  Torok was

notified of the hearing by Certified Mail Return Receipt Requested.  (*See* Exhibit 2 to

Supplemental Declaration of Joseph H. Boyle).  The envelope was returned

unclaimed.  (*See id.*).  Torok did not appear at the August 8, 2005 hearing.  As of this

date, Torok has not entered an appearance or filed an Answer or other responsive

pleading.

II.    Standard of Review

Default judgment may enter against a party who fails to appear or otherwise

defend.  Pursuant to Fed. R. Civ. P. 55(b)(2), judgment by default may be entered:

> By the Court.  In all other cases the party entitled to a judgment by
> default shall apply to the court therefor; but no judgment by default shall
> be entered against an infant or incompetent person unless represented
> in the action by a general guardian, committee, conservator, or other
> such representative who has appeared therein. If the party against
> whom judgment by default is sought has appeared in the action, the
> party (or, if appearing by representative, the party's representative) shall
> be served with written notice of the application for judgment at least 3
> days prior to the hearing on such application.  If, in order to enable the

court to enter judgment or to carry it into effect, it is necessary to take an
account or to determine the amount of damages or to establish the truth
of any averment by evidence or to make an investigation of any other
matter, the court may conduct such hearings or order such references
as it deems necessary and proper and accord a right of trial by jury to the
parties when and as required by any statute of the United States.

"[A] party is not entitled to a default judgment as of right; rather the entry of a default

judgment is entrusted to the ‹sound judicial discretion' of the court." *Cablevision of

Southern Connecticut, Limited Partnership v. Smith*, 141 F. Supp. 2d 277, 281 (D.

Conn. 2001). "[I]n civil cases, where a party fails to respond, after notice the court is

ordinarily justified in entering a judgment against the defaulting party." *Cablevision of

Southern Conn.*, 141 F. Supp 2d at 282 (internal quotation marks and citation

omitted).


III.    Findings and Conclusions

In determining whether a claim for relief has been established, the well-

pleaded facts in the complaint are deemed true. *Dundee Cement Co. v. Howard Pipe

& Concrete Prod., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). *See also DIRECTV, Inc.

v. Bloniarz*, 336 F. Supp. 2d 723, 725 (W.D. Mich. 2004) ("It is well-established that

once a default is entered against a defendant, that party is deemed to have admitted

all of the well-pleaded allegations in the complaint pertaining to liability"). In addition,

the court accepts the undisputed facts set forth in the Declarations and exhibits.

The court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. § 1331 because Echostar brings claims against Torok for violation of several federal statutes prohibiting the interception of satellite communications, including the DMCA, the Federal Communications Act, and the ECPA.  Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(a) because the events giving rise to Echostar's claims occurred in this District.  The court has personal jurisdiction over Torok based upon service of a copy of the Summons and Complaint on Torok on April 8, 2005.  (*See* Return of Service (doc. # 4)).  Torok is an individual, not an infant, incompetent person, or currently in military service.  (*See* Exhibit 3 to Echostar's Motion; Declaration of Joseph H. Boyle in Support of Plaintiffs' Motion for Default Judgment Against Defendant Alexander Torok (doc. # 17) at ¶ 8).

The uncontested facts before the court establish as follows.  DISH Network Signal Integrity ("DNSI") investigates allegations that individuals have unscrambled or attempted to unscramble Echostar programming by illegal means and/or without proper authorization.  (Complaint at ¶ 22;  Exhibit 1 to Echostar's Motion at ¶ 2).  DNSI monitors eBay, a website that provides for auction of goods via the internet, for goods listed that may attempt to receive Echostar programming by illegal means.  (Exhibit 1 to Echostar's Motion at ¶ 3).

Between May 16, 2004 and June 29, 2004, Terry Mawby, an investigator for DNSI, investigated Torok, who was using the eBay ID name "theatermaster" for his auction listings of Echostar receivers.  (Exhibit 1 to Echostar's Motion at ¶ 5; Complaint at ¶ 25).  Mawby noted that Torok was using terminology to describe his

auction listings, such as "JTAG" and "Box Keys," that is commonly used by persons attempting to receive Echostar programming by illegal means. (Exhibit 1 to Echostar's Motion at ¶ 5).

On or about May 16, 2004, Mawby discovered eBay auction items 5700350836, 5700548657, 5700349159, 5700349250, and 5700350439 advertised, offered to the public, and marketed for sale by Torok using the seller name "theatermaster." (Exhibit 1 to Echostar's Motion at ¶¶ 6-10). The auction items were described as "DISH Network Echostar 3900 Receiver w/ BOX KEYS & JTAG!," "DISH Network Echostar 3700 Receiver w/ BOX KEYS & JTAG!," and "DISH Network Echostar 2700 Receiver w/ BOX KEYS & JTAG!." (Exhibit 1 to Echostar's Motion at ¶¶ 6-10). The auction items were further described as "never been ECM'd," "Boxkeys extracted," "excellent receivers for testing," and "boxkeys extracted for your convenience." (Exhibit 1 to Echostar's Motion at ¶¶ 6-10). These descriptions indicated that the Echostar receivers had been altered, modified, and/or compromised to enable users to receive Echostar programming by illegal means without permission from or payment to Echostar. (Exhibit 1 to Echostar's Motion at ¶¶ 6-10).

On or about May 23, 2004, Mawby discovered eBay auction items 5701465814, 5701466012, 5701465634, and 570465224 advertised, offered to the public, and marketed for sale by Torok using the seller name "theatermaster." (Exhibit 1 to Echostar's Motion at ¶¶ 11-14, 19). The auction items were described as "DISH Network Echostar 3900 Receiver w/ BOX KEYS & JTAG!," "DISH Network Echostar

7

3700 Receiver w/ BOX KEYS & JTAG!," and "DISH Network Echostar 2700 Receiver w/ BOX KEYS & JTAG!." (Exhibit 1 to Echostar's Motion at ¶¶ 6-10). The auction items were further described as "excellent receivers for testing," and "boxkeys extracted for your convenience." (Exhibit 1 to Echostar's Motion at ¶¶ 11-14). These descriptions indicated to Mawby that the Echostar receivers had been altered, modified, and/or compromised to enable users to receive Echostar programming by illegal means without permission from or payment to Echostar. (Exhibit 1 to Echostar's Motion at ¶¶ 11-14).

On May 21, 2004, using the e-mail address extracted2test@yahoo.com from the DNSI location in Denver, Colorado, Mawby contacted Torok at the e-mail address torok@zoominternet.net to further inquire about auction item # 5700349159, an Echostar receiver listed for sale. (Exhibit 1 to Echostar's Motion at ¶ 15). In the e-mail, Mawby inquired "is there anything included that helps prevent ecms?" (Exhibit 1 to Echostar's Motion at ¶ 15). On May 22, 2004, Mawby received a response from Torok stating "[n]othing included that prevents ECMs, but upon purchase and payment, I will email you a link to the place where I get all the newest script updates. Even if there is an ECM, I am almost always up within 1 day." (Exhibit 1 to Echostar's Motion at ¶ 15).

On May 23, 2005, Mawby purchased auction item # 5700350439 by submitting the highest bid on eBay. (Exhibit 1 to Echostar's Motion at ¶ 16). Mawby contacted Torok and provided him with an alias name and delivery address in Colorado for delivery of item # 5700350439. (Exhibit 1 to Echostar's Motion at ¶ 17). Torok sent

Mawby an invoice via e-mail. (Exhibit 1 to Echostar's Motion at ¶ 18). Mawby purchased a money order for the agreed purchase price, payable to Alex S. Torok and referencing the eBay auction number won by Mawby. (Complaint at ¶ 26). On or about June 29, 2004, Mawby received a package from Torok containing one Echostar receiver. (Exhibit 1 to Echostar's Motion at ¶ 20). On the bottom of the receiver were written numerical sequences that correctly identified the Box Keys advertised by Torok in the eBay auction. (Exhibit 1 to Echostar's Motion at ¶ 20). The receiver had been modified for intercepting, receiving, unscrambling, and using Echostar's digitally scrambled satellite signals without authorization. (Complaint at ¶ 27).

Echostar's claims are supported by the well-pleaded allegations and the evidence. By his default, Torok has admitted all facts to establish his liability. Echostar must still establish its damages. *See United States for Use of M-CO Const., Inc. v. Shipco General, Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) ("After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages")*; Cablevision of Southern Conn.,* 141 F. Supp. 2d at 282 ("While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.") (internal quotation marks and citation omitted); *Patray v. Northwest Publishing, Inc.*, 931 F. Supp. 865, 869 (S.D. Ga. 1996) ("allegations of the complaint are to be accepted as true, except those relating to the amount of damages") (citation omitted).

A.      The DMCA

Echostar's First, Second, and Third Causes of Action allege that Torok violated

17 U.S.C. § 1201(a)(1), § 1201(a)(2), and § 1201(b)(1).  (*See* Complaint at ¶¶ 29-46).

Appropriate relief for violations of § 1201(a)(1), § 1201(a)(2), and § 1201(b)(1)

includes damages, injunctive relief, reasonable attorney fees, and costs.  *See* 17

U.S.C. § 1203(b).

Section 1201(a)(1) prohibits a person from circumventing a technological

measure that effectively controls access to a work protected under Title 17.

Section 1201(a)(2) prohibits the trafficking in any technology or device that "(A) is

primarily designed or produced for the purpose of circumventing a technological

measure that effectively controls access to a work protected under this title; [or] (B)

has only limited commercially significant purpose or use other than to circumvent a

technological measure that effectively controls access to a work protected under this

title." "Subsection 1201(b)(1) is similar to subsection 1201(a)(2), except that

subsection 1201(a)(2) covers those who traffic in technology that can circumvent a

technological measure that effectively controls access to a work protected under Title

17, whereas subsection 1201(b)(1) covers those who traffic in technology that can

circumvent protection afforded by a technological measure that effectively protects a

right of a copyright owner under Title 17." *Universal Studios, Inc. v. Corley*, 273 F.3d

429, 441 (2d Cir. 2001) (internal quotation marks and citations omitted).  "In other

words, although both subsections prohibit trafficking in a circumvention technology,

the focus of subsection 1201(a)(2) is circumvention of technologies designed to prevent access to a work, and the focus of subsection 1201(b)(1) is circumvention of technologies designed to permit access to a work but prevent copying of the work or some other act that infringes a copyright." *Corley*, 273 F.3d at 441. "Subsection 1201(a)(1) differs from both of these anti-trafficking subsections in that it targets the use of a circumvention technology, not the trafficking in such a technology." *Corley*, 273 F.3d at 441.

Based on the allegations of the complaint, which are deemed admitted, the court finds that Torok has violated the DMCA, 17 U.S.C. § 1201(a)(1), § 1201(a)(2), and § 1201(b)(1), by circumventing the technological measures that control access to Echostar programming and trafficking in signal theft devices. Remedies for violations of 17 U.S.C. § 1201(a)(2) are governed by 17 U.S.C. § 1203. Echostar seeks statutory damages in the amount of $200.00 for each of Torok's nine violations of § 1201(a)(1), § 1201(a)(2), and § 1201(b)(1). Section 1203 provides in pertinent part:

(3) Statutory damages.--

> (A) At any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages for each violation of section 1201 in the sum of not less than $200 or more than $2,500 per act of circumvention, device, product, component, offer, or performance of service, as the court considers just.

The court in its discretion need not reduce or remit the total award of damages, as there is no evidence that Torok was not aware or had no reason to believe that his

acts constituted a violation.  *See* § 1203(c)(5)(A).  The DMCA also authorizes

temporary and permanent injunctions on such terms as the court deems reasonable

to prevent or restrain a violation.  *See* 17 U.S.C. § 1203.

B.      The Federal Communications Act

Echostar's Fourth and Fifth Causes of Action allege injury from Torok's violation

of 47 U.S.C. § 605(a) and § 605(e)(4).  (*See* Complaint at ¶¶ 47-59).  *See* 47 U.S.C. §

605(e).  Echostar seeks statutory damages as well as injunctive relief and litigation

costs.  *See* 47 U.S.C. § 605(e).  Based on the allegations of the complaint, which are

deemed admitted, the Court finds that Torok has violated 47 U.S.C. § 605(a) and §

605(e)(4), by circumventing the technological measures that control access to

Echostar programming by use of altered Echostar receivers and/or Box Keys and by

trafficking in signal theft devices.

Any person aggrieved by a violation of § 605(e)(4) may seek damages under

47 U.S.C. § 605(e)(3)(C), which provides that an aggrieved party may recover actual

damages or statutory damages.  Under § 605(e)(3)(C)(i), damages are to be

computed, "at the election of the aggrieved party," in accordance with either of the

following:

> (I) actual damages suffered by the aggrieved party as a result of the
> violation and any profits of the violator; or

(II) statutory damages for each violation of subsection (a) in a sum of not less than $1,000 or more than $10,000, as the court considers just, and, for each violation of subsection (e)(4), statutory damages in a sum of not less than $10,000, or more than $100,000, as the court considers just.

Echostar has elected to seek statutory damages, as opposed to actual damages, and asks the court to award $1,000 for each of Torok's nine violations of subsection (a) and $10,000 for each of Torok's nine violations of subsection (e)(4). *See, e.g.,* 47 U.S.C. § 605(e)(4) ("the prohibited activity established herein as it applies to each such device shall be deemed a separate violation"); *DIRECTV, Inc. v. Adkins*, 320 F. Supp. 2d 474, 476 (W.D. Va. 2004) (statute deems selling or distributing of each device to be a separate violation) (citing § 605(e)(4)).

Echostar is entitled to statutory damages of $1,000 for each of Torok's nine violations of § 605(a) and $10,000 for each of Torok's nine violations of § 605(e)(4). No less than $10,000 should be awarded because there is no indication that Torok was "not aware" or "had no reason to believe" his acts violated § 605. *See* § 605(e)(3)(C)(iii). Echostar is also entitled to injunctive relief for violations of § 605(a). *See* 47 U.S.C. § 605(e)(3)(B) (providing that a court may grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a)).

C.    The ECPA

The ECPA applies to the piracy of satellite television. *United States v. Lande*,

968 F.2d 907, 908 (9th Cir. 1992).  In an action under the ECPA, appropriate relief

includes damages, equitable relief, reasonable attorney fees, and costs. See 18

U.S.C. § 2520(b).  Pursuant to the ECPA,

> the court may assess as damages whichever is the greater of-
>
> (A) the sum of the actual damages suffered by the plaintiff and any
> profits made by the violator as a result of the violation; or
>
> (B) statutory damages of whichever is the greater of $100 a day for each
> day of violation or $10,000.

18 U.S.C. § 2520(c)(2).

Here, Echostar is not seeking actual damages and did not offer any evidence

as to the number of days the violation occurred.  Therefore, the court may award

Echostar $10,000.  Echostar may also obtain injunctive relief for violation of §

2511(1)(a).  18 U.S.C. § 2520(b)(1).


D.      Attorney Fees and Costs

Echostar is entitled to reasonable attorney fees and costs incurred in

prosecuting its claims.  *See* 17 U.S.C. § 1203 (award discretionary), 18 U.S.C. §

2520(b)(3)(award discretionary), and 47 U.S.C. § 605(e)(3)(B)(iii) (award mandatory).

The court has reviewed the requested fees and costs and finds them reasonable.

(*See* Exhibit 4 to Echostar's Motion (Declaration of Chad Hagan Regarding Attorneys'

Fees and Costs) at ¶¶ 5-10; Exhibit 5 to Echostar's Motion (Declaration of Todd A.

Jansen Regarding Attorney's Fees); Declaration of Joseph H. Boyle (doc. # 17) at ¶¶

14

9, 10).[3]

Accordingly, IT IS RECOMMENDED that:

I.      Plaintiffs' Motion for Default Judgment (filed May 31, 2005) (doc. # 10) be GRANTED;

II.     Default judgment be entered on the Complaint in favor of Plaintiffs and against Defendant Torok;

III.    Plaintiffs' requests for statutory damages, injunctive relief, attorney fees, and costs against Defendant Torok be granted as follows:

    A.      $1,800.00 in statutory damages ($200.00 for each of Defendant's nine (9) violations of 17 U.S.C. § 1201(a)(1)(A), pursuant to 17 U.S.C. § 1203);

    B.      $1,800.00 in statutory damages ($200.00 for each of Defendant's nine (9) violations of 17 U.S.C. § 1201(a)(2), pursuant to 17 U.S.C. § 1203);

    C.      $1,800.00 in statutory damages ($200.00 for each of Defendant's nine (9) violations of 17 U.S.C. § 1201(b)(1), pursuant to 17 U.S.C. § 1203);

    D.      $9,000.00 in statutory damages ($1,000.00 for each of Defendant's nine (9) violations of 47 U.S.C. § 605(a), pursuant to 47 U.S.C. § 605(e)(3)(C)(i)-(ii));

    E.      $90,000.00 in statutory damages ($10,000.00 for each of Defendant's nine (9) violations of 47 U.S.C. § 605(e)(4), pursuant to 47 U.S.C. § 605(e)(3));

    F.      $10,000.00 in statutory damages for Defendant's violation of 18 U.S.C. § 2511(1)(a), pursuant to 18 U.S.C. § 2520(c)(2);

G.      Attorney fees in the amount of $4,887.50 and costs and expenses in the amount of $295.36, for a total of $5,182.86, pursuant to 17 U.S.C. § 1203 and 47 U.S.C. § 605(e)(3);

H.      **Resulting in a total judgment of $119,582.86 (one hundred nineteen thousand five hundred and eighty two dollars and eighty six cents) plus post-judgment interest at the legal rate pursuant to 28 U.S.C. § 1961 from the date of entry of this judgment.**

I.      Equitable relief pursuant to 17 U.S.C. § 1203(b)(1), 18 U.S.C. § 2520(b)(1), and 47 U.S.C. § 605(e)(3)(B)(i) as follows:

1.      **an order be entered permanently enjoining Defendant Alexander Torok and his agents or anyone acting on his behalf from:**

a.      manufacturing, importing, offering to the public, providing, modifying, or otherwise trafficking in any Echostar receiver that has been modified without authorization (including any Access Cards that have been modified without authorization), any satellite pirating device regardless of form, or any other technology, product, service, device, component, or part thereof, that:

i.      is primarily designed or produced for the purpose of circumventing the encryption access control protection contained in the software on Plaintiffs' Access Cards, contained within Plaintiffs' set-top boxes, or any other technological measure adopted by Plaintiffs that effectively controls access to copyrighted programming or effectively protects the exclusive rights afforded the owners of copyrighted programming.

ii.     has only limited commercially

16

significant purpose or use other than to circumvent Plaintiffs' encryption access control protection, or any other technological measure adopted by Plaintiffs that effectively controls access to copyrighted programming or effectively protects the exclusive rights afforded the owners of copyrighted programming.

iii.      is knowingly marketed by Defendant and/or others acting in concert with him for use in circumventing Plaintiffs' encryption access control protection, or any other technological measure adopted by Plaintiffs that effectively controls access to copyrighted programming or effectively protects the exclusive rights afforded the owners of copyrighted programming; and

b.      assembling, modifying, selling, advertising, marketing, possessing, transporting and/or distributing through any means whether via the Internet or otherwise, any Echostar receiver or Access Card that has been modified without authorization or any other electronic, mechanical, or other devices, the design of which renders them primarily useful for the purpose of the surreptitious interception of electronic communications.

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may

serve and file written objections to the magistrate judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of

Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583

(10th Cir. 1995).

17

The district judge shall make a *de novo* determination of those specific portions of the proposed findings or recommendations to which specific objection is made. 28 U.S.C. § 636(b)(1). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. *See In re Griego*, 64 F.3d at 583; *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1).

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *One Parcel of Real Property*, 73 F.3d at 1060. Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and may result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (district court's decision to review a magistrate's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal*

*Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain

portions of the magistrate's order, cross-claimant had waived its right to appeal those

portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992)

(by their failure to file objections, plaintiffs waived their right to appeal the magistrate's

ruling). *But see, Morales-Fernandez v. INS*, ___ F.3d ___, 2005 WL 1871118 at * 2,

slip op. No. 03-1111 (10th Cir. (Colo.) Aug. 9, 2005) (firm waiver rule does not apply

when the interests of justice require review).

DATED at Denver, Colorado, this 22nd day of August, 2005.

BY THE COURT:

s/Craig B. Shaffer
Craig B. Shaffer
United States Magistrate Judge

1.     On August 10, 2005, Plaintiffs voluntarily dismissed Defendants John Does 1-10 from this civil action.  (*See* Plaintiffs' Dismissal of Defendants John Does 1-10 Without Prejudice Pursuant to Fed. R. Civ. P. 41(a)(1) (doc. # 23)).

2.     An altered Echostar receiver is one that has been modified for one or more of the following purposes: (1) preventing or limiting Echostar's ability to communicate

with the receiver; (2) accessing the proprietary software and/or proprietary information contained within the receiver; and (3) assisting and/or otherwise facilitating the installation of other signal theft devices.  (Complaint at ¶ 7).

The term "Published Box Keys" refers to the unique number sequence through which a receiver and access card communicate and is contained only within the receiver's and/or access card's proprietary software.  Box Key numbers are published by writing the number sequence on the bottom of the receiver from which the number sequence was obtained.  The Box Keys may be used in conjunction with other signal theft devices to circumvent technological measures that control access to Echostar programming.  (Complaint at ¶ 8).

3.	The total amount of fees and costs reflected in the "[Proposed] Default Judgment Against Defendant Alexander Torok" (doc. # 18) and the Declaration of Joseph H. Boyle at ¶ 10 is $5,182.86, which amount does not precisely match the combined amounts reflected in the Declarations of Chad Hagan ($4,932.86) and Todd Jansen ($1,030.00).  The court concludes that the lesser total amount ($5,182.86) is reasonable and may properly be awarded.